IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| ANTHONY GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| CITY OF MILWAUKEE, Milwaukee Police | ) | |
| Chief EDWARD FLYNN, Milwaukee Police | ) | |
| Captain EDITH HUDSON, Milwaukee Police | ) | |
| Sergeant JASON MUCHA, and JOHN DOES 1-4, | ) | |
| | ) | |
| Defendants. | ) | Jury Demand |

**COMPLAINT**

Plaintiff, ANTHONY GIBSON, by his attorneys, People's Law Office and The Shellow Group, for his complaint against Defendants CITY OF MILWAUKEE, Milwaukee Police Chief EDWARD FLYNN, Milwaukee Police Captain EDITH HUDSON, Milwaukee Police Sergeant JASON MUCHA, and John Does 1-4, states:

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a municipal corporation located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**Parties**

4. Plaintiff Anthony Gibson is a 45 year old African American resident of the State

1

of Wisconsin and the City of Milwaukee.

5. Defendant City of Milwaukee is a Wisconsin municipal corporation and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment. Defendant City of Milwaukee is additionally responsible for the policies and practices of the Milwaukee Police Department.

6. Defendant Edward Flynn is and was at all times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Flynn is being sued in his individual and official capacities.

7. Defendant Edith Hudson was at all times relevant to this action the Captain of the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of her employment. Defendant Hudson is being sued in her individual capacity.

8. Defendant Jason Mucha was at all times relevant to this action a sergeant in the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Mucha is being sued in his individual capacity.

9. Defendant John Does 1-4 are current and/or former officers of the Milwaukee Police Department, who, on information and belief, worked in the Fifth District under the supervision of Defendant Mucha at all times relevant to this action.

10. Each of the individual defendants named above engaged in the conduct complained of under color of state law and in the course and scope of his employment as a Milwaukee police officer.

**Facts**

11. On the afternoon of February 4, 2011, Plaintiff Anthony Gibson was at the Citgo gas station at Capital Drive and Sherman Boulevard in the City of Milwaukee.

12. Plaintiff approached a vehicle that was parked in the gas station parking lot.

13. Two Milwaukee police officers exited the vehicle, pointed their weapons at Plaintiff and asked him, "Where's the dope?"

14. These officers conducted a pat down search of Plaintiff, took Plaintiff's cell phone out of his pocket and proceeded to look through the phone numbers in his cell phone.

15. Defendant John Does 1-3 arrived at the gas station in an unmarked black police truck.

16. The two officers who had initially detained Plaintiff, handcuffed him, and put him into the unmarked police truck.

17. When Plaintiff entered the truck, Defendant John Doe 1 demanded that Plaintiff give him "the dope" and give him information about a drug dealer who went by the nickname "Hope."

18. Plaintiff told Defendant John Doe 1 that he did not have any drugs and did not know anyone named Hope.

19. Defendant John Doe 1 told Plaintiff he was a "fucking liar" and smacked Plaintiff across the face with his open hand.

20. Plaintiff complained to Defendant John Does 2 and 3 about being struck in the face, and again told Defendant John Doe 1 that he did not have any drugs and that he did not know anyone named Hope. Defendant John Doe 1 then smacked Plaintiff across the face a second time.

21. Defendant John Does 1-3 then drove Plaintiff into the garage of a police station, took him out of the truck, and brought him into a room where a fourth officer, Defendant John Doe 4, was waiting.

22. Defendant John Doe 4 told Defendant John Does 1-3 to "strip him."

23. When Plaintiff repeated that he did not have any drugs, Defendant John Doe 4 said "we're going to find out."

24. Defendant John Does 2 and 3 each held one of Plaintiff's arms while Defendant John Doe 1 unbuckled Plaintiff's belt and pulled Plaintiff's pants and underwear down to his ankles.

25. Defendant John Does 2 and 3 spread Plaintiff's butt cheeks with their hands and Defendant John Doe 1 told Plaintiff to "bend over and cough."

26. When Plaintiff bent over, Defendant John Doe 1, with no probable cause or reasonable suspicion that Plaintiff possessed contraband on or about his person, stuck his hand between Plaintiff's buttocks and shoved his finger inside Plaintiff's anus.

27. On information and belief, Defendant John Doe 1 was not a health care professional, and he conducted the invasive and unreasonable search in an unsafe, unhygienic, and intentionally humiliating fashion.

28. Defendant John Does 1-4 had no warrant to conduct such a search on Plaintiff.

29. Plaintiff did not consent to the officers' invasive and unreasonable search and was helpless, given the Defendants' status as Milwaukee police officers and that the search was conducted while Plaintiff was handcuffed and being restrained.

30. Defendant John Does 1-4 did not recover any drugs or contraband from their search of Plaintiff.

31. As a direct and proximate result of Defendants' actions, as detailed above, Plaintiff suffered and continues to suffer, *inter alia*, bodily injury, pain and suffering, extreme mental distress, anguish, humiliation, shame and fear.

*Criminal Charges and Convictions Against Milwaukee Police Officers Related to Illegal Body Cavity and Strip Searches*

32. In 2012, the Milwaukee District Attorney's Office conducted a secret investigation into allegations of illegal body cavity and strip searches by Milwaukee police officers, during which they interviewed and reviewed statements of dozens of victims and witnesses.

33. In October of 2012, the State of Wisconsin charged Michael Vagnini and three other Milwaukee police officers with multiple felonies and misdemeanors related to illegal body cavity and strip searches of Milwaukee citizens.

34. Vagnini was charged with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, ten counts of misconduct in public office, and one count of false imprisonment.

35. In April of 2013, Vagnini negotiated a plea in which the seven felony sexual assault charges were dismissed, and he pleaded no contest to four felony charges of misconduct in public office and four misdemeanor charges of conducting illegal strip and body cavity searches of African American men.

36. In June of 2013, Vagnini was sentenced to 26 months in prison and 34 months of extended supervision.

37. Another Fifth District Milwaukee police officer who often worked with Vagnini, Jabob Knight, was charged with one count of misconduct in public office and one count of conducting an illegal strip search.

38. In July of 2013, Knight negotiated a plea in which the felony count of misconduct in public office was dismissed, and he pleaded no contest to one misdemeanor charge of

5
Case 2:13-cv-01021-AEG   Filed 09/10/13   Page 5 of 12   Document 1

conducting an illegal strip search.

### *The City's Knowledge of Unconstitutional Cavity Searches*

39. As early as 2008, the Internal Affairs Division of the Milwaukee Police Department, as well as other authorities within the City of Milwaukee, were aware of multiple complaints about illegal and unconstitutional strip and body cavity searches of citizens.

40. The Internal Affairs Division ignored the clear and obvious pattern of illegal and abusive cavity and strip searches demonstrated by these civilian complaints, repeatedly rejected the complaints as meritless and refused to recommend discipline for the accused officers.

41. Subsequently, Milwaukee Chief of Police Flynn admitted, in April of 2013, that the Department had been receiving complaints for several years before it opened its own investigation of the allegations.

42. Milwaukee Police Department supervisors, including Defendants Captain Edith Hudson and Sergeant Jason Mucha, also had knowledge of the numerous complaints of illegal strip and body cavity searches.

43. Undeterred by this knowledge, the policymakers, including but not limited to Defendants Flynn, Hudson and Mucha failed to take any action to train, supervise or discipline the officers who committed these illegal searches.

44. Instead, supervisors rewarded several of the officers who engaged in these illegal searches with commendations for their aggressive police tactics, including commendations from Defendant Flynn.

45. Responsible authorities within the City of Milwaukee, including Defendant Flynn, concealed from the public and from judges, prosecutors and defense counsel that the Milwaukee Police Department had a *de facto* policy and practice which endorsed and encouraged illegal

6

body cavity searches.

46. Following disclosure of the investigation by the Milwaukee District Attorney's Office of Milwaukee police officers for conducting unconstitutional and illegal body cavity and strip searches, the Milwaukee Police Department acknowledged its failure to adequately supervise and train its officers and changed its search policy to require authorization from higher ranking officials for each body cavity and strip search.

### Count I – 42 U.S.C. § 1983
### Unreasonable Search and Seizure

47. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

48. The actions of Defendant John Does 1-4 in illegally searching and physically abusing Plaintiff violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count II – 42 U.S.C. § 1983
### Excessive Force

49. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

50. The actions of Defendant John Doe 1 in physically abusing Plaintiff by smacking him across the face constituted unreasonable and excessive force and violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count III – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of His Constitutional Rights

51. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

52. Defendant John Does 1-4, acting within the scope of their employment and under color of state law, agreed between and among themselves to act jointly and in concert in order to

7

deprive Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures, as described in the various paragraphs of this Complaint.

53. In this manner, Defendant John Does 1-4 conspired by concerted action to accomplish an unlawful purpose by unlawful means.

54. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated the unreasonable search and seizure of Plaintiff and was an otherwise willful participant in the joint activity.

55. As part of this conspiracy, Defendant John Does 1-4 agreed to conceal from responsible authorities that they had committed, in this case and several others, unlawful body cavity searches.

56. The misconduct described in this Count was undertaken willfully, intentionally, and/or with reckless indifference to Plaintiff's rights.

57. As a direct and proximate result of Defendants' conspiracy and actions in furtherance of the conspiracy, Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures was violated and he suffered the injuries set forth above.

### Count IV – 42 U.S.C. § 1983
### *Monell* Policy and Practice Claim

58. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

59. The actions of Defendant John Does 1-4 as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Milwaukee, its Police Department, its Fire and Police Commission, its Internal Affairs Division and/or its Police Chief.

60. At all times material to this complaint Defendant City of Milwaukee and its Police Department, Fire and Police Commission, Internal Affairs Division and/or Police Chief

8

had interrelated *de facto* policies, practices, and customs which included, inter alia, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit unreasonable searches and seizures; b) the police code of silence; and/or c) the encouragement of unreasonable searches and seizures and wrongful arrests.

61. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have falsely arrested and/or unreasonably searched a criminal defendant.

62. The *de facto* policies, practices and customs of failing to properly hire, train, supervise, monitor, discipline, counsel and control police officers, the code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

63. At the time of the incident giving rise to this complaint, officers of the Milwaukee Police Department, as a matter of widespread practice so prevalent as to constitute a municipal policy, abused citizens on a regular basis in a manner similar to the abuse inflicted on Plaintiff, as set forth in this Complaint, yet the Milwaukee Police Department made findings of wrongdoing by officers in an exceedingly small number of cases.

64. Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants by municipal supervisors and policymakers, as well as by a wide range of

9

Case 2:13-cv-01021-AEG   Filed 09/10/13   Page 9 of 12   Document 1

other police officials, officers, and divisions of the Department, including its Internal Affairs Division, further establishes that these acts were part of a widespread municipal policy, practice and custom. This involvement and ratification is further demonstrated, *inter alia*, by the Department's failure for several years to investigate the unconstitutional conduct of the Defendants and other officers, or to discipline them in this or other cases for their unconstitutional conduct.

65. The aforementioned policies, practices and/or customs of failing to hire, train, supervise, monitor, discipline, counsel and control police officers, the police code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia*, because the Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the Police Chief, Fire and Police Commission, on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct. Although dozens of citizens formally complained to the Milwaukee Police Department, detailing the policy, pattern and practice, for years the Department failed to investigate or take adequate responsive action.

66. But for the belief that they would be protected, both by fellow officers and by the Department, from serious career consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

67. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the aforesaid acts against Plaintiff and therefore acted as

the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

## Count V – 42 U.S.C. § 1983
## Supervisory Liability

68. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

69. Defendants Flynn, Hudson, and Mucha knew or reasonably should have known that Defendant John Does 1-4 would violate citizens' constitutional rights in one or more of the ways described above, and/or knew or reasonably should have known that Defendant John Does 1-4 had a pattern of engaging in improper searches, including public strip and cavity searches.

70. Defendants Flynn, Hudson, and Mucha facilitated, approved, condoned, turned a blind eye to, and/or purposely ignored the pattern of misconduct of Defendant John Does 1-4.

71. As a result of this misconduct Plaintiff suffered the damages set forth above.

## Count VI – Indemnification

72. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

73. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

74. At all times relevant to this action, Defendants Flynn, Hudson, Mucha and John Does 1-4 committed the acts alleged above in the scope of their employment with the City of Milwaukee.

WHEREFORE, Plaintiff Anthony Gibson asks that this Court enter judgment in his favor and against Defendants City of Milwaukee, Chief of Police Edward Flynn, Captain Edith Hudson, Sergeant Jason Mucha, and John Does 1-4, awarding compensatory damages, attorneys'

11

fees, and costs against each Defendant, and punitive damages against each of the individual

Defendants, as well as any other relief this Court deems appropriate.


## JURY DEMAND

Plaintiff, ANTHONY GIBSON, hereby demands a trial by jury pursuant to Federal

Rule of Civil Procedure 38(b) on all issues so triable.


Dated:  September 10, 2013                              Respectfully submitted,

/s/ Ben H. Elson
Ben H. Elson, IL Bar #6286106
John L. Stainthorp, IL Bar #3128243
Jan Susler, IL Bar #277840
Sarah Gelsomino, IL Bar #6298391
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL  60642
(773) 235-0070
ben.elson79@gmail.com

Robin Shellow, #1006052
The Shellow Group
324 West Vine Street
Milwaukee, WI  53212
(414) 263-4488
tsg@theshellowgroup.com

Attorneys for Plaintiff